**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-1156-WJM-KLM

DANIEL J. MILLER,
TERANCE M. MAHER,
MAHER FINANCIAL SERVICES PPST,
DAVID MICHAUD,
BURRIS A. BRUCE,
WAYNE LARSON, Maurice A. Larson GST Trust,
HUGH THOMAS, JR. IRA 4949,
GARY L. PETERSEN,
MARLAYNE C. MILLER,
DAVID O'BANNON,
DORIS T. REA, Executor of Estate Claudia Rea Browers,
BRUCE LAMBERT REVOCABLE LIVING TRUST,
DANIEL M. LAVIK,
4 D'S INVESTMENT CLUB,
CHESTERFIELD MORTGAGE INVESTORS, INC.,
ESTATE OF CHARLES R. ST. JOHN, St. John Fee Family LLC,
ESTATE OF HARRY A. KIEHL,
ROGER C. CLINE,
PETER VERMEULEN, Vermeulen Family LLC,
JOSEPHINE S. VERMEULEN, Trustee (J.S. Vermeulen Living Trust),
JOSEPHINE S. VERMEULEN, Trustee (GST Exempt Family Trust of A. Vermeulen),
WOLSDORF LIVING TRUST,
DAVID ROOK,
JAMES G. BENNETT,
DORIS M. STROM,
JAMES ROSE,
RON IBSEN, and
WAYNE D. PORTER,

    Plaintiffs,

v.

HAROLD S. MCCLOUD,
THOMAS J. POWER, and
CORELOGIC COMMERCIAL REAL ESTATE SERVICES, INC.,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiffs bring this action against Defendants Harold S. McCloud ("McCloud"), Thomas J. Power ("Power") and CoreLogic Commercial Real Estate Services, Inc. ("CoreLogic") (collectively, "Defendants"). (ECF No. 36.) Before the Court are McCloud's Motion for Summary Judgment (ECF No. 88) and CoreLogic's Motion for Summary Judgment (ECF No. 90). For the reasons set forth below, both motions are granted.

## I. BACKGROUND

The following relevant facts are undisputed, unless otherwise noted. Defendants McCloud and Power are licensed Colorado appraisers. (ECF No. 88-1 ¶ 5.) In August, 2006, Plaintiff Chesterfield Mortgage Investors, Inc. ("CMI") hired McCloud and Power to appraise a property located in Adams County, Colorado at 1300 & 1400 W. 62nd Avenue and 6155 Lipan Street (the "Property").[1] (*Id.* ¶¶ 1, 33; ECF No. 90 ¶ 7.) Plaintiffs provide evidence that Power was an employee of First American Commercial Real Estate Services (now CoreLogic) at the time he performed the August 2006 Appraisal (the "Appraisal"). (ECF No. 94 ¶ 18; ECF No. 94-2 at 4; ECF No. 94-3 at 4.) CoreLogic neither admits nor explicitly denies that Power was its employee at that time. (ECF No. 90 ¶ 66.)

---

[1] It is unclear exactly when the owners of the Property acquired the additional parcel at 6155 Lipan Street. Nevertheless, the parcel was acquired before Defendant's August 2006 Appraisal, and therefore the exact date of the acquisition does not affect the Court's analysis. (ECF No. 88-1 ¶ 31.)

At the time of the Appraisal, the Property was owned by MJR One, LLC. (ECF No. 88-1 ¶¶ 1, 53, 64.) The Property was located over a former landfill and housed a building containing a disco and cabaret. (*Id.* ¶¶ 6, 9.) In December 2003, CMI initially loaned $2,500,000 to MJR One, LLC, and MJR Two, LLC (collectively, the "Borrowers"), secured by the Property. (*Id.* ¶ 7.) Except for eight of the Plaintiffs, all other Plaintiffs bought participatory interests in the 2003 loan. (ECF No. 90 ¶¶ 2, 26; ECF No. 96 ¶ 47.)

In 2006, the Appraisal was conducted and provided a retrospective valuation that the Property was worth $5,350,000 "as is" as of December 9, 2005. (ECF No. 88-16 at 3.) The Appraisal also contained the following language:

> The appraisers have made no investigation into the presence or absence of . . . hazardous materials in the subject property. The reader should be aware that no consideration has been given to the impact, if any, on the valuation of the subject property if any of these materials should be present. . . . The site was a former land fill that has undergone remediation. We make no representations regarding the landfill or presence or absence of hazardous materials on this property.

(ECF No. 90 ¶ 54.)

After receiving the appraisal, CMI included it in a 2006 Offering Circular that it provided to the other Plaintiffs. (ECF No. 88-1 ¶ 40.) The Borrowers refinanced their original loan with CMI in 2006. (ECF No. 90 ¶ 12.) The refinanced loan ("Loan #2282") was in the amount of $3,100,000 and secured by the Property. (*Id.* ¶ 13.) All of the Plaintiffs in this case bought participatory interests in Loan #2282. (*Id.* ¶¶ 2, 26, 29.) CMI also obtained participatory interests in the loan. (*Id.* ¶ 38.)

In 2007, the Borrowers were in default under the terms of Loan #2282. (ECF No. 88 ¶ 43.) CMI initiated foreclosure proceedings against the Property and ultimately purchased the Property at the Public Trustee's sale for $4,000,000. (ECF No. 95 ¶¶ 38, 40.) Because CMI's lien against the Lipan Street parcel was a second deed of trust, the holder of the first lien, Brooke Banbury, took title to the parcel and ultimately sold it for $300,000. (ECF No. 88-1 ¶¶ 64–65.) On February 8, 2012, CMI sold the remaining portion of the Property to a third party for $1,399,000. (*Id.* ¶ 66.)

Defendants McCloud and Power are from Colorado. (ECF No. 95 ¶ 1.) CoreLogic is incorporated in Florida while its principal place of business is in California. (*Id.* ¶ 2.) CMI was an asset-based lender based in Seattle, Washington. (*Id.* ¶ 3.) The other individual Plaintiffs "are in large part, Washington residents." (*Id.* ¶ 4.)

On April 22, 2013, Plaintiff Daniel J. Miller commenced a lawsuit in King County Superior Court in Washington against McCloud, Power, and their respective wives. (ECF No. 1-1 at 1, 7–8.) The defendants in that suit removed the action to the United States District Court for the Western District of Washington, on the basis of diversity jurisdiction. (*Id.* at 1–2.) On June 24, 2013, the remaining Plaintiffs joined the suit by filing an amended complaint. (ECF No. 1-27 at 19.) On February 24, 2014, the Western District of Washington found that, on the record, it lacked personal jurisdiction over the defendants in that action. (ECF No. 1-24 at 1.) The court permitted Plaintiffs to conduct jurisdiction-related discovery; however, Plaintiffs elected not to pursue that option. (ECF No. 1.) Instead, Plaintiffs consented to transfer the action to this District. (*Id.*)

On July 11, 2014, Plaintiffs filed a Second Amended Complaint against Defendants McCloud, Power, and Corelogic. (ECF No. 36.) That complaint brings

4

claims against Defendants for negligence, negligent misrepresentation, constructive fraud, a violation of the Washington Consumer Protection Act, and a violation of the Washington Securities Act. (*Id.* at 10–12.) On June 26, 2015, McCloud and Corelogic filed the instant motions for summary judgment. (ECF No. 88; ECF No. 90.) Each motion moves for summary judgment as to all claims against Defendants. Plaintiffs filed a Response to both of the motions. (ECF No. 95.) McCloud and Corelogic then filed replies to the Response. (ECF No. 96; ECF No. 98.) Power joins both McCloud's and CoreLogic's motions for summary judgment and their replies to the extent that they are not inconsistent with his position in the case.[2] (ECF No. 89; ECF No. 91; ECF No. 97; ECF No. 99.) As such, the relief granted to McCloud and CoreLogic will also be granted as to Power.

## II. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal*

---

[2] Power specifies that he does not join CoreLogic's argument that he was not acting within the scope and course of his employment with CoreLogic when he performed the Appraisal. (ECF No. 91 at 1.)

*Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III. ANALYSIS

**A.    Choice of Law**

The Court must first determine what law applies to the resolution of Plaintiffs' claims. Generally, when a district court transfers a case to another forum, the transferee court must follow the choice of law rules of the transferor court. *Doering ex rel. Barrett v. Copper Mountain*, 259 F.3d 1202, 1209 (10th Cir. 2001). However, the Tenth Circuit has held that when the transferor court lacks personal jurisdiction, the choice of law rules of the transferee court apply. *Id.*

In this case, the action was transferred from the Western District of Washington. (ECF No. 1.) Therefore, the Court should apply Washington choice of law rules unless the Western District of Washington lacks personal jurisdiction over Defendants. A federal court obtains personal jurisdiction over defendants in a diversity case as long as jurisdiction is proper under state law and does not offend due process. *Doering*, 259 F.3d at 1210. Washington's long-arm statute extends a court's personal jurisdiction to the limits of federal due process. *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989). Due process requires that minimum contacts exist between the defendant and the forum state such that the maintenance of the suit does not offend

6

traditional notions of fair play and substantial justice. *Doering*, 259 F.3d at 1210. The minimum contacts standard may be met in one of two ways. *Id*. First, a court may exercise "general jurisdiction" if the defendant's contacts with the forum state are continuous and systematic. *Id*. Second, a court may exercise "specific jurisdiction" if the defendant purposefully directs activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. *Id*.

In this case, the Western District of Washington found that it lacked personal jurisdiction over McCloud and Power, based on the record as it existed at that time. (ECF No. 1-24 at 11–12.) Plaintiffs have not since sought to expand the record on that subject, and the Court finds nothing in the current record which contradicts the reasoning of the Western District of Washington. Therefore, the Court finds that the Western District of Washington lacked personal jurisdiction over McCloud and Power.[3] Because the transferor court lacks personal jurisdiction over Defendants, the Court will apply Colorado choice of law rules. *See Doering*, 259 F.3d at 1209.

Colorado courts use the "most significant relationship" test to resolve choice of law issues in tort actions. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 510 (Colo. 2007); *see also Agile Safety Variable Fund, L.P. v. RBS Citizens, N.A.*, 793 F. Supp. 2d 1258, 1253–54 (D. Colo. 2011) (applying most significant relationship test to a state-law securities act claim). Colorado's choice of law principles consider "the needs

---

[3] The Western District of Washington made no finding as to its jurisdiction over CoreLogic because CoreLogic was not yet a defendant in the case. (*See* ECF 1-24.) The Court finds that the Western District of Washington lacks personal jurisdiction over CoreLogic for the same reasons that it lacks personal jurisdiction over the other Defendants. Plaintiffs have presented no evidence that CoreLogic had systematic or continuous contacts with Washington, nor any evidence that CoreLogic knew the investors would be from Washington.

of the interstate and international systems, the relevant policies of the forum and other interested states, protection of justified expectations, the basic policies underlying the particular field of law, predictability and uniformity of result, and ease of determination and application of the law to be applied." *AE, Inc.*, 168 P.3d at 510 (citing Restatement (Second) of Conflict of Laws § 6 (1971)). In applying these general principles, the Court is to consider (1) the place of injury; (2) the place where the injury-causing conduct occurred; (3) the parties' residence, place of incorporation, and place of business; and (4) the place where the relationship, if any, between the parties is centered. *Id*. (citing Restatement (Second) of Conflict of Laws § 145).

Under these factors, Colorado has a stronger relationship to this case than Washington. The appraisal occurred and the appraisal report was drafted in Colorado. Therefore, the injury-causing conduct occurred in Colorado. (*See* ECF No. 88-16.) As to the residence of the parties, McCloud and Power reside in Colorado, while many of the Plaintiffs reside in Washington. (ECF No. 95 ¶¶ 1–4.) However, the relationship between Plaintiffs and Defendants centered around the Property which was located in Colorado. (*Id.* ¶ 4.) CMI chose to reach out to and hire Colorado-based appraisers to appraise a Colorado property. (*Id.* ¶ 14.) *See Ajjarapu v. AE Biofuels, Inc.*, 728 F. Supp. 2d 1154, 1163–64 (D. Colo. 2010) (finding that Colorado had the most significant relationship to the plaintiffs' claims because the conduct that caused the injury occurred in Colorado; one of the defendants resided in Colorado; and Colorado was the place where the relationship was centered). Because Colorado has the most significant relationship to Plaintiff's claims, the Court finds that Colorado law applies to these claims.

**B.      Statutes of Limitation and Repose**

1. <u>Negligence</u>

Under Colorado law, tort actions, including negligence claims, must be commenced within two years after the cause of action accrues. Colo. Rev. Stat. § 13-80-102(1)(a). A cause of action for negligence accrues when both the injury and its cause are known or should have been known by exercise of reasonable diligence. *Id*. § 13-80-108(1).

In our case, Plaintiffs contend that the earliest their claims accrued was August 19, 2010, when CMI sought approval for the final sale of the Property for substantially less than the value set forth in the Appraisal.[4] (ECF No. 90 ¶¶ 59–60; ECF No. 95 at 31.) CoreLogic agrees that the claims accrued no later than that date. (ECF No. 98 at 27.) The Court agrees with the parties and finds that Plaintiffs' claims accrued on August 19, 2010, because at that time Plaintiffs knew, or should have known in the exercise of reasonable diligence, of their alleged injury and the alleged cause.

Plaintiff Daniel J. Miller filed a negligence claim on April 22, 2013. (ECF No. 1-1 at 1.) The remaining Plaintiffs first filed their negligence claim on June 24, 2013. (ECF No. 1-27 at 19.) Thus, for all Plaintiffs, the negligence claim commenced more than two years after the claim accrued. Therefore, Plaintiffs' negligence claim is barred by the Colorado statute of limitations as to all Defendants.

2. <u>Negligent Misrepresentation</u>

CoreLogic contends that Colorado law subjects negligent misrepresentation claims to a two-year limitations period. (ECF No. 90 at 43.) There is precedent for this

---

[4] Plaintiffs make no argument that the date of accrual differs as to any Plaintiff or Defendant.

interpretation. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1537 (10th Cir. 1996.) Nevertheless, Colorado statute provides that a three-year limitations period applies to civil actions for "fraud, misrepresentation, concealment, or deceit . . . ." Colo. Rev. Stat. § 13-80-101(1)(c). The statute does not specify that the term "misrepresentation" refers only to *intentional* misrepresentation. *See id.* Therefore, claims for negligent misrepresentation seemingly also fall under § 13-80-101(1)(c). For this reason, this Court has previously found that the three-year limitations period applies to claims for negligent misrepresentation. *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1150–51 (D. Colo. 2005).

Prior decisions that do not apply a three-year limitations period to negligent misrepresentation claims can be distinguished or do not apply to the case at hand. Some of these decisions applied Colorado statutes which were repealed in 1986. *See Ebrahimi v. E.F. Hutton & Co., Inc.*, 794 P.2d 1015, 1016–17 (Colo. App. 1989); *Zurick v. First Am. Title Ins. Co.*, 833 F.2d 233, 235 (10th Cir. 1987). On the other hand, in *Trierweiler*, the Tenth Circuit applied the two-year statutory period, but did not reject the possibility that a three-year period could be applicable. *Trierweiler*, 90 F.3d 1523, 1537. In fact, in that opinion the Tenth Circuit chose not to provide any analysis of § 13-80-101(1)(c) whatsoever. *See id.* (citing *Callaham v. First Am. Title Ins. Co.*, 837 P.2d 769, 771 (Colo. App. 1992) which also fails to discuss § 13-80-101(1)(c)).

Consequently, the Court finds that Colorado law subjects negligent misrepresentation claims to a three-year limitations period. For the same reasons as provided for the negligence claim, Plaintiffs' negligent misrepresentation claim accrued on August 19, 2010. All Plaintiffs had filed their negligent misrepresentation claim by

June 24, 2013. (ECF No. 1-1 at 1; ECF No. 1-27 at 19.) Thus the claim was filed less than three years after the date of accrual, and the Court cannot find that Plaintiffs' negligent misrepresentation claim is barred by the statute of limitations.[5]

### 3. Colorado Securities Act

Plaintiffs brought their securities claim under the Washington Securities Act. (ECF No. 36 at 11.) Plaintiffs' allegations under the Washington Securities Act use language which exactly mirrors the language of the relevant portion of the Colorado Securities Act, Colorado Revised Statutes § 11-51-501(1). (*See id.*) Since the Court finds that Colorado law applies, the Court will interpret Plaintiffs' securities claim under § 11-51-501(1) of the Colorado Securities Act ("CSA").

Section 11-51-604(8) of the Colorado Revised Statutes contains a five-year statute of repose whereby a plaintiff may "in no event" sue under § 11-51-501(1) of the CSA "more than five years after the purchase or sale" of the pertinent security. In this case, Plaintiffs' securities act claim is premised on their purchasing of participatory interests in Loan #2282.[6] (ECF No. 95 at 22.) For their CSA claim to be timely under the statute of repose, Plaintiffs must have purchased their participatory interests no more than five years before filing their claim.

---

[5] CoreLogic was not added as a Defendant until Plaintiffs' Second Amended Complaint was filed on July 11, 2014. (ECF No. 36.) Although this filing was more than three years after the date the negligent misrepresentation claim accrued, CoreLogic makes no argument that the statute of limitations bars this claim because of the later filing date itself. (*See* ECF No. 90 at 43.) Therefore, the Court will not consider the impact of this later filing date on its statute of limitations analysis.

[6] Defendants argue that the participatory interests are not securities. (ECF No. 90 at 38.) For the purposes of this statute of repose analysis, the Court assumes that they are securities.

11

CoreLogic contends that Plaintiffs purchased their interests more than five years before filing their securities act claim. (ECF No. 90 at 44.) In their Response to the Motions for Summary Judgment, Plaintiffs do not contest CoreLogic's assertion that they had purchased their securities more than five years before filing their securities act claim. (ECF No. 95 at 31.) Instead, Plaintiffs argue only that Colorado law, and thus the statute of repose, does not apply. (*Id.*) The Court has already determined that the CSA applies. Accordingly, the Court will analyze whether Colorado's five-year statute of repose bars Plaintiffs' securities claim.

In order for the claim to be barred by the statute of repose, the securities must have been purchased prior to April 22, 2008, for Plaintiff Daniel J. Miller and prior to June 24, 2008, for all other Plaintiffs. CoreLogic provides documents to demonstrate the dates when Plaintiffs purchased their participatory interests. (*See* ECF No. 90-18; ECF No. 90-19; ECF No. 90-20; ECF No. 90-33; ECF No. 90-36.) All of these dates are in February 2008 or earlier. (*See id.*) Accordingly, these dates are more than five years earlier than Plaintiffs' filing of their securities claim.

Plaintiffs present evidence that the purchase dates contained in CoreLogic's evidence would not necessarily be correct for any individual Plaintiff who "changed their [*sic*] mind" after making an initial decision to invest on the dates provided in the documents. (ECF No. 94 ¶ 27; ECF No. 94-1 at 5–6). However, Plaintiffs provide no evidence that any of the Plaintiffs changed his or her mind as to the amount that Plaintiff would be investing in Loan #2282 after June 24, 2008. Therefore, the Court finds that Plaintiffs did not file their securities claim within five years of purchasing their securities and their claim is barred by the statute of repose as to all Defendants.

### C. Negligent Misrepresentation

Plaintiffs allege that Defendants "negligently . . . misrepresented material information regarding the [Property]" in the Appraisal. (ECF No. 36 at 10.) Under Colorado law, "[t]o prevail on a claim for negligent misrepresentation," a plaintiff must first prove that the defendant "supplied false information in a business transaction." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009). Plaintiffs' contend that this requirement is satisfied because "Defendants falsely represented the fair market value of the [Property]" in the Appraisal. (ECF No. 36 at 10.) Plaintiffs reason that the value is false because "environmental conditions, such as the former landfill and methane gas issues, are absent from the [Appraisal]" and "[t]hose issues should have been considered in the valuation." (ECF No. 95 at 17.) Plaintiffs also present deposition testimony that it was "very likely that the real property value was lower" than the value contained in the Appraisal. (ECF No. 95-2 at 23.)

However, none of the evidence presented by Plaintiffs is sufficient to prove that Defendants supplied false information. In fact, the Appraisal itself contained specific disclaimers that Defendants did not consider "the impact, if any, on the valuation of the [Property] if any of these [hazardous] materials should be present." (ECF No. 90 at 24.) Secondly, the Appraisal states that the appraisers "make no representations regarding the landfill." (*Id*. at 24.) Thus, Defendants agree with Plaintiffs that the Appraisal does not account for the impact of certain environmental conditions on the valuation.

The appraisal does not assert itself to be the "true" value of the Property absent all conditions. Instead, the Appraisal only claims to provide the value of the Property

subject to the assumptions contained in the above-stated disclaimers. Plaintiffs provide no evidence that the value represented in the Appraisal was false *given the assumptions explicitly made in the Appraisal itself*.[7] As a result, the Court finds that there is no genuine issue of material fact as to this claim and that Plaintiffs fail to prove the first element of their negligent misrepresentation claim. The Court grants summary judgment as to Plaintiffs' negligent misrepresentation claim as to all Defendants.

**D.     Constructive Fraud**

Plaintiffs allege that Defendants' conveyance of a value that did not account for environmental factors constitutes constructive fraud. (ECF No. 36 at 12; ECF No. 95 at 20 n.8.) Colorado law defines "constructive fraud" as "a breach of duty, which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive, violate confidence, or injure public interests." *Rosales v. AT&T Info. Sys., Inc.*, 702 F. Supp. 1489, 1498 (D. Colo. 1988) (quoting *Sec. Nat'l Bank v. Peters, Writer & Christensen Inc.*, 569 P.2d 875, 880 (Colo. App. 1977)). "Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud." *Sec. Nat'l Bank*, 569 P.2d at 881.

As the Court discussed in its analysis of the negligent misrepresentation claim, the evidence provided by Plaintiffs is not sufficient to prove that Defendants provided

---

[7] Plaintiffs' argument, including that the real property value "very likely . . . was lower," is based on the notion that a reasonably prudent appraiser cannot exclude consideration of environmental factors, even if the appraiser explicitly states such an exclusion. That, however, is a claim for professional negligence, and this Court has already ruled that Plaintiffs' negligence claim was not timely filed.

false information. The contents of the Appraisal could only tend to deceive or violate the confidences of a reader who both (a) assumes that the valuations in the Appraisal will account for hazardous materials and the landfill, and (b) fails to read the disclaimers contained in the Appraisal which discredit this assumption. Thus, the only type of person who could be deceived by the appraisal or have their confidence violated or be injured by it is someone who did not read the entire appraisal. Plaintiffs do not argue that the constructive fraud doctrine excuses individuals from reading the entire appraisal.

Since the information contained in the Appraisal is neither false nor misleading, the Court finds that Defendants conduct—even if it were found to be a breach of an applicable duty—has no tendency to deceive, violate confidence, or injure public interests. Therefore, the Court grants summary judgment as to Plaintiffs' constructive fraud claim as to all Defendants.

### E.      Colorado Consumer Protection Act

To prove a private cause of action under the Colorado Consumer Protection Act ("CCPA"), a plaintiff must show: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential customers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings, USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003). Defendants argue, first, that Plaintiffs allege no facts proving any unfair or deceptive trade practice by

Defendants. (ECF No. 88 at 13.) In the alternative, Defendants argue that Defendants' practices do not significantly impact the public. (*Id.*)

Colorado Revised Statutes § 6-1-105 contains a list of potential deceptive trade practices under the CCPA.[8] For the same reasons that the Court found that Defendants' conduct had no tendency to deceive, the Court now finds that none of the listed deceptive trade practices in § 6-1-105 apply. *See also Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1142 (D. Colo. 2013) (holding that a deceptive trade practice under § 6-1-105 requires a showing that defendant knowingly made a false representation). The Court finds that there is no genuine issue of material fact as to this claim and that Plaintiffs fail to prove that Defendants engaged in an unfair or deceptive trade practice. Given this ruling, the Court need not consider Defendants' alternative argument that the allegedly unfair or deceptive trade practice did not significantly impact the public. (ECF No. 88 at 13.) The Court grants summary judgment as to Plaintiffs' CCPA claim as to all Defendants.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant McCloud's Motion for Summary Judgment (ECF No. 88), as joined by Defendant Power (ECF No. 89), is GRANTED as to all claims;

2. Defendant CoreLogic's Motion for Summary Judgment (ECF No. 90), as joined by Defendant Power (ECF No. 91), is GRANTED as to all claims;

---

[8] Plaintiffs do not argue that Defendants committed an "unfair," as distinguished from a "deceptive," trade practice. (*See* ECF No. 36; ECF No. 95.)

3. The Final Trial Preparation Conference scheduled for May 27, 2016 and the ten-day jury trial scheduled for June 13, 2016 through June 24, 2016 are VACATED;

4. The Clerk of Court shall enter judgment in favor of Defendants on all claims and shall terminate this case; and

5. Defendants shall have their costs.

Dated this 10th day of February, 2016.

BY THE COURT:

_____
William J. Martínez
United States District Judge